IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BETTY MADEWELL, Individually and as Representative of the ESTATE of BOBBY JOE MADEWELL, JR., deceased, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 2:13-CV-581-RSP |
| GREGG COUNTY, | § | JURY |
| Defendant. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Betty Madewell, Individually and as Representative of the Estate of Bobby Joe Madewell, Jr., files her Second Amended Complaint, complaining of Defendant Gregg County, and would respectfully show the Court the following:

## I.
## PARTIES

1. Plaintiff Betty Madewell is the biological mother of Bobby Joe Madewell, Jr. and the administrator of his Estate. Bobby Madewell, who died on or about March 21, 2013, was a pretrial detainee at the time of his death, while incarcerated in the Gregg County Jail, in Longview, Gregg County, Texas. Mrs. Madewell is a resident of Gregg County, Texas.

2. Defendant Gregg County is a county of the State of Texas. Gregg County funds and operates the Gregg County jail. Gregg County is responsible for the implementation of the policies, procedures, practices and customs, as well as the acts and omissions, challenged by this

lawsuit. Gregg County is also responsible for insuring that all of its facilities, including the Gregg County Jail, and its agents and employees obey the laws of the State of Texas and the United States and are in compliance with federal and state law, department or agency policies, rules, and regulations and related standards of care. Gregg County has filed an Answer and has appeared for all purposes in this case.

## II.
## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the Plaintiff is suing for relief under 42 U.S.C. §1983.

4. Venue is appropriate in the United States District Court for the Eastern District of Texas, Marshall Division, because this is the judicial district in which Defendant Gregg County is located and in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.
## FACTS AND ALLEGATIONS

5. Prior to his death in the Gregg County Jail on or about March 21, 2013, Bobby Madewell had been prescribed certain medications, including Xanax and hydrocodone. He had been taking these medications for years as prescribed. He lived with his mother, Betty Madewell, in Gregg County and helped her with her antiques store.

6. Six days before his confinement in the Gregg County Jail, on March 6, 2013, Bobby Madewell saw his primary care physician for chronic back, leg and shoulder pain and hypertension. His prescription medications included Xanax and hydrocodone (Norco).

According to his doctor's notes, he did not have any chest pain, irregular heartbeat, or palpitations. His heart had a regular rate and rhythm, with no murmurs, gallops or rubs. His lungs were clear.

7. On March 12, 2013, at approximately 8:00 a.m., Bobby Madewell was confined in the Gregg County Jail as a pre-trial detainee. At the time of his confinement, he was dependent on his prescription medications, including Xanax and hydrocodone, without which he would suffer from severe, painful and life-threatening withdrawal symptoms. At the time of his confinement, Bobby Madewell advised Gregg County jail officials and agents of his medical condition, including but not limited to, the fact that he was taking the physician-prescribed medications, including Xanax (Alprazolam) and hydrocodone, and he was dependent on these medications, without which he would suffer from severe, painful and life-threatening withdrawal symptoms. Bobby Madewell also advised Gregg County jail officials and agents that he was taking medication for his high blood pressure, and that he was allergic to certain medications, including Haldol (Haloperidol). At the time of Bobby Madewell's confinement on March 12, 2013 and at all times thereafter, the Gregg County jail officials, agents and the Gregg County medical facility officials and agents were aware of his physical condition and his dependence on his prescription medications, and that the failure to provide appropriate medical treatment to Bobby Madewell could result in his death.

8. When Bobby Madewell was confined to the Gregg County jail, he did not have his prescription medications in his possession. His mother, Betty Madewell, and friend Sally Walls went to the Gregg County jail with his bottles of his prescription medications from the

pharmacy, including Xanax, hydrocodone, and the blood pressure medication, so that the jail medical staff could administer his prescription medications during his confinement. These medication bottles identified to the Gregg County jail officials and agents the medications that Bobby Madewell was prescribed, the dosages, the frequency at which he was required to take these medications, the name of his doctor, and other pertinent information.

9. Ms. Walls gave the prescription bottles to a nurse at the Gregg County Jail. The nurse kept the blood pressure medication, and counted out the pills in the bottle. The nurse told Ms. Walls that the Gregg County Jail did not permit inmates to take prescription Xanax and hydrocodone while in the jail. Ms. Walls also told the nurse that Bobby Madewell was allergic to Haldol (Haloperidol), and wrote it on the piece of paper where the nurse had written down the count of the high blood pressure pills. Ms. Walls signed the paper, which the nurse kept.

10. Bobby Madewell and others specifically requested that the Gregg County jail officials dispense his prescription medications of Xanax and hydrocodone to him. Gregg County jail officials and agents refused and failed to provide Bobby Madewell with these medications that would prevent him from suffering from the life-threatening and painful withdrawal symptoms that would ultimately take his life nine days later.

11. During the time that Bobby Madewell was confined to the Gregg County jail, he and others requested that the Gregg County jail officials and agents provide him with the physician-prescribed medications Xanax and hydrocodone, but he was denied those medications while in the jail.

12. Despite Bobby Madewell's physician's orders concerning the daily administration of his medications, he was denied his prescription Xanax and hydrocodone. Despite his experiencing outward signs and symptoms of seizures, seizure-like activity and withdrawal signs and symptoms, he was never given any of these physician-prescribed medications or provided any appropriate medical care and treatment.

13. Gregg County has admitted and acknowledged by its counsel as well as its Sheriff on numerous occasions that by policy and procedure, Gregg County refuses to provide all medications -- including Xanax and hydrocodone -- that are on a list of non-approved medications to inmates such as Bobby Madewell. His primary medications, which were Xanax and hydrocodone, are on Gregg County's list of non-approved medications, and Gregg County refuses to provide those prescription medications to inmates regardless of their doctors' orders.

14. On Tuesday, March 19, 2013, Betty Madewell went to the Gregg County Jail to visit her son and was told that she could not see him because he was "very, very sick" and not eating. She was extremely worried and contacted her son's attorney, who called the Gregg County Jail and was told that Bobby Madewell was "fine."

15. From March 12, 2013 to March 21, 2013, Gregg County jail officials and medical personnel permitted Bobby Madewell to progress into a state of profound withdrawal, resulting from the precipitous withdrawal of his prescribed medications Xanax and hydrocodone. Throughout this interval, he was unable to eat and began having the common and usual symptoms from the precipitous withdrawal of Xanax and hydrocodone medications, including seizures, seizure-like activity and other symptoms.

16. Ultimately, Bobby Madewell progressed into such a profound state of physical and emotional withdrawal that it caused his death on or about March 21, 2013 while he was confined in a separation cell in the Gregg County Jail.

17. In the early morning hours of March 21, 2013, Gregg County jail personnel called the City of Longview Emergency Medical Services for an ambulance and emergency medical personnel. Bobby Madewell's body was transferred from the Gregg County Jail and arrived at Good Shepherd Medical Center where he was ultimately pronounced dead.

18. The circumstances of Bobby Madewell's death are eerily similar to the death of Amy Lynn Cowling,[1] who died in the Gregg County Jail on December 29, 2010, four days and fifteen hours after her incarceration in the Jail. Autopsy reports by two different doctors confirmed that Cowling's death was caused by seizures from the withdrawal from her prescription medications (including Xanax, one of the medications denied to Bobby Madewell), which Gregg County refused to provide to her because those medications were on its "non-approved medications" list. Dr. Lewis Browne, the medical director of the Gregg County Jail, created the non-approved medications list that represents the official policy of Gregg County for medical care at the Jail.

19. Evidence adduced in the Cowling case showed that if an inmate has been prescribed medications on the Gregg County Jail "non-approved medications" list, the Jail medical staff would not administer these drugs to an inmate no matter what the apparent need. There is no policy documentation relative to this list of non-approved drugs to differentiate

---

[1] *See Vicki Bankhead, et al v. Gregg County*, case 2:11-CV-00279-JRG, in the Eastern District of Texas, Marshall Division. Judge Gilstrap was the presiding judge in the case.

between "prescribed" from "non-prescribed" medications, no consideration of clinical indications for the medications, no consideration of the likelihood of major drug withdrawal if the medication is suddenly discontinued, and no guideline or requirement relative to notification of the Jail Medical director, Dr. Browne, prior to abrupt discontinuation of these drugs at time of booking. Like Cowling, Bobby Madewell had been prescribed medications that were on the Jail's "non-approved medications" list, the Jail medical staff refused to provide him with the medications, and as a result, he was dead in a matter of days after entering the Jail.[2]

## IV.
## CAUSE OF ACTION UNDER 42 U.S.C. § 1983

20. Plaintiff Betty Madewell re-alleges paragraphs 1 through 19, inclusive, with regard to all causes of action.

21. At all times material to this Complaint, Gregg County acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Gregg County.

22. Therefore acting under the color of law, Gregg County deprived Bobby Madewell and other pretrial detainees of the rights and privileges secured to them by the Fourth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment. Madewell pleads her 42 U.S.C. § 1983 case under the alternative theories of conditions of confinement and episodic acts or omissions, as discussed at length by the Fifth Circuit in *Shepherd v. Dallas County*, 591 F.3d

[2] Gregg County filed a motion for summary judgment denying that Cowling had been subjected to constitutionally inadequate conditions of confinement with respect to her medical care in the Gregg County jail. The Court held a lengthy hearing on the summary judgment motion and declined to grant the motion. Instead, after a jury was selected, the Court suggested a third round of mediation, during which the parties eventually reached a confidential settlement.

445 (5th Cir. 2009). In *Shepherd*, the Fifth Circuit explained at length the legal distinctions between a conditions of confinement theory of recovery and an episodic acts or omissions theory of recovery, and reiterated and clarified the legal standards for a conditions of confinement claim. The Fifth Circuit noted that constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a "condition of confinement" or an "episodic act or omission." *Shepherd*, 591 F.3d at 452. Madewell believes that her case is properly analyzed as a conditions of confinement case; she pleads an episodic acts or omissions case in the alternative.

23. Shepherd relied on evidence showing that the inadequate treatment he received in a series of interactions with the jail's medical system, including its failure to provide his prescription medications, inevitably led to his suffering a stroke. *Shepherd*, 591 F.3d at 453. Dallas County was held liable for the unconstitutional conditions of confinement at its jail.[3] The Fifth Circuit determined that from the evidence Shepherd adduced, the court could reasonably infer a *de facto* jail policy of failing properly to treat inmates. This case is even more egregious because here, Madewell points to numerous ***official***, as well as ***de facto***, policies of Gregg County that created and perpetuated a constitutionally inadequate system of health care that resulted in Bobby Madewell's death.

[3] Dallas County had no written policy in which it refused to provide an inmate his medications. Dallas County medical staff had prescribed high blood pressure medication to Shepherd, but the medication administration system in the jail was so broken that Shepherd rarely received his medication, and ultimately suffered a massive stroke that has left him paralyzed for life. By contrast, in this case, Madewell will prove through Gregg County's own documents that it had a written policy expressly denying all inmates any medication on a long list of "non-approved medications" regardless of the circumstances, and the refusal to give Bobby Madewell his prescription medications resulted in his death.

24. As described herein, the constitutionally inadequate system of medical care – the conditions at the Gregg County Jail – caused Bobby Madewell to suffer a deprivation of his constitutional rights. These conditions of his confinement as set forth in this First Amended Complaint were not reasonably related to a legitimate governmental purpose. These conditions amounted to punishment before Bobby Madewell was judged guilty and thus violated due process of law. Gregg County's intent to punish pretrial detainees such as Bobby Madewell may be inferred from its decision to expose them to unconstitutional conditions. In other words, an official intent to punish may be presumed when a plaintiff challenges general conditions, practices, rules, or restrictions of pretrial confinement.

25. Gregg County is liable to Madewell under 42 U.S.C. §1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail and the resulting death of Bobby Madewell. Gregg County's legislative body, its Commissioners' Court, also has a statutory, non-delegable duty under Texas law to provide a "safe and suitable" Jail rather than a constitutionally deficient one. Tex. Loc. Gov't Code § 351.001(a). Gregg County is presumed to have intended these conditions through the decisions of its legislative body, the Commissioners' Court.

26. Concerning specific conditions of confinement, at all relevant times by policy and procedure, Gregg County refused to provide certain medications, including Xanax and hydrocodone, to inmates such as Bobby Madewell. At all relevant times, Gregg County failed to provide constitutionally adequate medical care for inmates with chronic illnesses or addictions like Bobby Madewell. At all relevant times, there was deficient medication administration at the

Gregg County Jail, not only for Xanax and hydrocodone but for other prescription medications as well. Gregg County frequently failed to administer medication in accordance with prescriptions and follow general standards of care to monitor and adjust inmates' prescribed medication regimens. At all relevant times, Gregg County failed to place decision-making employees with the proper medical background and knowledge to realize and understand all of the medical, biological, and physiological results associated with the immediate and continued withdrawal from prescription medication usage. At all relevant times, Gregg County failed to monitor the confinement of inmates like Bobby Madewell to ensure that they were receiving appropriate medical services and medication in the jail. At all relevant times, Gregg County failed to maintain medical records that were accurate, complete, and transmitted to the proper medical professional at the jail. Gregg County implemented policies, procedures, and practices which actually interfered with or prevented Bobby Madewell and other inmates from receiving constitutionally adequate medical services and medications.

27. The challenged conditions set forth herein violated Bobby Madewell's constitutional rights and were the foreseeable product of the Gregg County Jail's policies of denying medications, including Xanax and hydrocodone, to all inmates regardless of their doctors' prescribing of the medication, providing inadequate medical care for inmates who suffer from chronic illnesses or addictions, failing to provide or refusing to provide other prescription medications, and failing to maintain accurate medical records and transmit them to the proper medical providers, because these conditions prevented confined persons such as Bobby Madewell from receiving constitutionally adequate medical care. As Madewell shows herein,

serious injury and death were the inevitable results of the Gregg County Jail's refusal to provide proper medical treatment to inmates with chronic illnesses or addictions such as Bobby Madewell. The conditions challenged in this lawsuit were arbitrary or purposeless, and not reasonably related to a legitimate goal. In the absence of any legitimate penological or administrative goal, Gregg County's actions amount to punishment in violation of Bobby Madewell's constitutional rights.

28. Alternatively, Gregg County's failure to provide constitutionally adequate medical care to Bobby Madewell as well at other inmates incarcerated in the Gregg County Jail constitutes deliberate indifference to the serious medical needs of Bobby Madewell and others. Gregg County jail officials and medical staff were actually aware of the serious risk to Bobby Madewell of their refusal to provide him the medications his doctor had prescribed, yet they failed to act with deliberate indifference to that risk, and consciously disregarded the risk. Jail officials exhibit deliberate indifference to an inmate's health when they refuse to treat him, ignore his complaints, or engage in any similar conduct that clearly evinces a wanton disregard for his serious medical needs. From March 12, 2013 to March 21, 2013, Gregg County jail officials and medical personnel firmly rejected Bobby Madewell's pleas for help, refused to provide him with his prescription medications, and watched him progress into a state of precipitous and profound withdrawal of his prescribed medications until he experienced an excruciatingly painful and utterly unnecessary death.

29. Moreover, Gregg County is liable for the actions of its jail officials and medical staff as described in this lawsuit because the constitutional violations of which Madewell

complains resulted from policies or customs adopted and maintained by Gregg County with objective deliberate indifference. From the moment that Bobby Madewell was confined in the Gregg County Jail, jail officials and medical personnel were told that it was imperative that Bobby Madewell receive his physician-prescribed medications on a timely basis and his need for these medications. By official policy and procedure, however, Gregg County refused to provide certain medications, including Xanax and hydrocodone, to inmates such as Bobby Madewell despite their doctors' orders. Gregg County failed to provide constitutionally adequate medical care for inmates with chronic illnesses or addictions like Bobby Madewell. Gregg County provided deficient medication administration at the jail. Gregg County frequently failed to administer medication in accordance with prescriptions and follow general standards of care to monitor and adjust inmates' prescribed medication regimens. Gregg County failed to monitor the confinement of inmates to ensure that they were receiving appropriate medical services and medication in the jail. Gregg County failed to maintain medical records that were accurate, complete, and transmitted to the proper medical professional at the jail.

30. Gregg County also failed to place decision-making employees with the proper medical background and knowledge to realize and understand all of the medical, biological, and physiological results associated with the immediate and continued withdrawal from prescription Xanax and hydrocodone usage by Bobby Madewell. Had the proper decision-making employees been in place, Bobby Madewell would not have had to endure the pain and agony that he went through during his days of confinement in Gregg County's jail and which eventually caused his death while he was under Gregg County's control.

31. Gregg County implemented policies, procedures, and practices which actually interfered with or prevented Bobby Madewell and other inmates from receiving constitutionally adequate medical services and medication. Gregg County's deliberately indifferent actions and/or inactions exposed Bobby Madewell to a serious risk of substantial harm and, in fact, caused substantial harm to him by causing his death as described above. These official policies of Gregg County were the moving force behind the constitutionally inadequate medical care provided to Bobby Madewell and the cause of his death.

32. Gregg County maintained these official policies with deliberate indifference to Bobby Madewell's constitutionally protected rights. Specifically, Gregg County intentionally, and with deliberate indifference, deprived Bobby Madewell of his clearly established federal constitutional rights to constitutionally required reasonably safe conditions of confinement, including his right to receive proper medical care and medications for his serious medical conditions that were known to Gregg County, and his right to be free from punishment as a pretrial detainee.

33. By its actions and/or inactions as described above, Gregg County has violated 42 U.S.C. § 1983 and Bobby Madewell's constitutional rights.

## V.
## DAMAGES

34. As a result of Gregg County's statutory and constitutional violations, Plaintiff Betty Madewell has suffered serious and substantial damages and injuries for which she requests the award of the following categories of damages:

a. The mental anguish, including emotional pain, torment and suffering that Madewell has experienced in the past and in the future due to the death of her son, Bobby Madewell;

b. The loss of society and companionship representing the positive benefits flowing from the love, comfort, companionship and society that Madewell has sustained in the past and in the future, in reasonable probability, due to the death of her son, Bobby Madewell;

c. The physical pain and suffering endured by Bobby Madewell throughout his confinement in the Gregg County Jail until his death.

d. The mental anguish, including emotional pain, torment, and suffering that Bobby Madewell endured throughout his confinement in the Gregg County Jail until his death; and

e. The medical expenses and burial expenses incurred by Bobby Madewell's estate and which were necessary for his treatment and eventual burial resulting from his death.

35. Madewell has retained the services of the undersigned attorneys, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1988.

## VI.
## JURY DEMAND

36. Madewell demands a trial by jury.

## VII.
## PRAYER FOR RELIEF

37. For the reasons stated above, Plaintiff Betty Madewell, individually and as representative of the Estate of Bobby Joe Madewell, Jr., deceased, requests that upon final trial or hearing, a judgment be entered in favor of the Plaintiff and against Defendant Gregg County as follows:

a. Awarding Madewell compensatory and actual damages in an amount that is deemed sufficient by the trier of fact;

b. Awarding Madewell reasonable and necessary attorneys' fees under 42 U.S.C. § 1988 and costs of court;

c. Awarding Madewell pre-judgment interest at the highest rate permitted by law;

d. Awarding Madewell post-judgment interest at the highest rate permitted by law; and

e. Awarding Madewell all such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

By:____/s/Jarom Tefteller___________

Jarom Tefteller
State Bar No. 24060705
Todd Tefteller
State Bar No. 19762300
TEFTELLER LAW, PLLC
403 West Tyler Street
Gilmer, Texas 75644
Telephone: (903) 843-5678
Fax: (903) 680-2310
Email: jt@teftellerlaw.com
Email: toddt@teftellerlaw.com

Debbie Branscum
State Bar # 02897300
P.O. Box 394
Bedford, Texas 76095-0394
Telephone: (214) 206-1975
Facsimile: (214) 432-0130
Email: dbranscum@tx.rr.com

Ronald W. Armstrong, II
State Bar No. 24059394
THE ARMSTRONG FIRM, PLLC
110 Broadway, Suite 444

San Antonio, Texas 78205
Telephone: (210) 277-0542
Facsimile: (210) 277-0548
Email: rwaii@armstrong-firm.com

ATTORNEYS FOR PLAINTIFF
BETTY MADEWELL

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2014 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Robert Scott Davis
FLOWERS DAVIS, LLP
1021 E.S.E. Loop 323, Suite 200
Tyler, TX 75701

***Attorney for Defendant Gregg County***

/s/Debbie Branscum
Debbie Branscum