IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BETTY MADEWELL, Individually and | § | |
| as Representative of the ESTATE of | § | |
| BOBBY JOE MADEWELL, JR., deceased, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:13-CV-581-RSP |
| | § | |
| GREGG COUNTY, | § | JURY |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff Betty Madewell, Individually and as Representative of the Estate of Bobby Joe Madewell, Jr., files her Third Amended Complaint, complaining of Defendant Gregg County, and would respectfully show the Court the following:

**I.**
**PARTIES**

1.     This lawsuit is brought because Bobby Joe Madewell, Jr., a pretrial detainee, died in the Gregg County, Texas jail on or about the early morning hours of March 21, 2013.  Bobby Joe Madewell, Jr. died after nine days of incarceration in the jail because he was denied his prescribed medications, which resulted in fatal seizures and withdrawals for which he received no medical treatment but received repeated use of a Taser and a straitjacket, referred to as "WRAP," in which he died.  Plaintiff Betty Madewell is the biological mother of Bobby Joe

Madewell, Jr. and the administrator of his Estate.  Mrs. Madewell is a resident of Gregg County, Texas.

2.      Defendant Gregg County is a county of the State of Texas.  Gregg County funds and operates the Gregg County jail.  Gregg County is responsible for the implementation of the policies, procedures, practices and customs, as well as the acts and omissions, challenged by this lawsuit.  Gregg County is also responsible for insuring that all of its facilities, including the Gregg County Jail, and its agents and employees obey the laws of the State of Texas and the United States and are in compliance with federal and state law, department or agency policies, rules, and regulations and related standards.  Gregg County has filed an Answer and has appeared for all purposes in this case.

## II.
## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the Plaintiff is suing for relief under 42 U.S.C. §1983.

4.      Venue is appropriate in the United States District Court for the Eastern District of Texas, Marshall Division, because this is the judicial district in which Defendant Gregg County is located and in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.
## FACTS AND ALLEGATIONS

5.      Prior to his death in the Gregg County Jail on or about March 21, 2013, Bobby Madewell had been prescribed certain medications, including Xanax (alprazolam), Norco

(hydrocodone), Zoloft (sertraline) and Tenormin (atenolol).   He had been prescribed these medications for years, and had the prescriptions regularly refilled.  Bobby Madewell lived with his mother, Betty Madewell, in Gregg County and helped her with her antiques store.

6.      Six days before his confinement in the Gregg County Jail, on March 6, 2013, Bobby Madewell saw his primary care physician for his regular visit.   His prescription medications included Xanax (alprazolam), Norco (hydrocodone), Zoloft (sertraline) and Tenormin (atenolol).   According to his doctor's notes for the March 6, 2013 treatment, Bobby Madewell did not have any chest pain, irregular heartbeat, or palpitations.   His heart had a regular rate and rhythm, with no murmurs, gallops or rubs.   His lungs were clear.   Bobby Madewell had never visited an emergency room for chest pain or any heart issues, and there was nothing to make his doctor suspicious of any heart condition.

7.      On March 12, 2013, at approximately 8:00 a.m., Bobby Madewell was confined in the Gregg County Jail as a pre-trial detainee.   At the time of his confinement, he was dependent on his prescription medications, including Xanax (alprazolam) and Norco (hydrocodone), without which he would suffer from severe, painful and life-threatening withdrawal symptoms.  During the book-in process, Bobby Madewell advised Gregg County jail officials and agents of his medical condition, including but not limited to the fact that he was taking the physician-prescribed medications, including alprazolam and hydrocodone, and he was dependent on these medications, without which he would suffer from severe, painful and life-threatening withdrawal symptoms.  Bobby Madewell also advised Gregg County jail officials and agents that he was taking medication to maintain his blood pressure, and jail staff knew he

was allergic to certain medications, particularly Haldol (haloperidol).  At the time of Bobby Madewell's confinement on March 12, 2013 and at all times thereafter, the Gregg County jail medical staff were aware of his physical condition and his dependence on his prescription medications, and that the failure to provide appropriate medical treatment to Bobby Madewell could result in his death.

8.      When Bobby Madewell was confined to the Gregg County jail, he did not have his prescription medications in his possession.  His mother, Betty Madewell, and girlfriend Sally Walls went to the Gregg County jail with his bottles of his prescription medications from the pharmacy, including Xanax (alprazolam), Norco (hydrocodone), and Zoloft (sertraline), so that the jail medical staff could administer his prescription medications during his confinement. These medication bottles presented to the Gregg County jail officials and agents identified the medications that Bobby Madewell was prescribed, the dosages, the frequency at which he was required to take these medications, the name of his doctor, and other pertinent information.

9.      Ms. Walls gave Bobby Madewell's prescription bottles to the pharmacy technician at the Gregg County Jail, Seletta Harper.  Ms. Harper kept only the Zoloft (sertraline), and counted out the pills in the bottle.  Ms. Harper refused to accept Bobby Madewell's prescriptions for Xanax (alprazolam) and Norco (hydrocodone).  Ms. Walls also told Ms. Harper that Bobby Madewell was allergic to Haldol (haloperidol), and wrote it on the piece of paper where Ms. Harper had written down the count of the Zoloft (sertraline) pills.  Ms. Walls signed the paper, which Ms. Harper kept.  Ms. Harper did not sign and date the form at the time, but signed and back-dated it after Gregg County began investigating Bobby Madewell's death.

**PLAINTIFF'S THIRD AMENDED COMPLAINT**                                                                **PAGE 4**

10.     Although Gregg County Jail medical staff were aware from the time of booking that Bobby Madewell was taking prescription medications, including Xanax (alprazolam) and Norco (hydrocodone), they made no effort to confirm Bobby Madewell's medications with his prescribing physician or the pharmacy that had refilled his prescriptions just days before his incarceration.   Jail staff did nothing to obtain his medical records from his doctor, Sharon Martin-Holm, M.D.

11.     Bobby Madewell and others specifically requested that the Gregg County jail officials dispense his prescription Xanax (alprazolam) and Norco (hydrocodone) medications to him.  Despite Bobby Madewell's physician's orders concerning the daily administration of his medications, his outward signs and symptoms of seizures, seizure-like activity, delusions, and other withdrawal signs and symptoms, he was never given any of these physician-prescribed medications or provided any appropriate medical care and treatment for the precipitous withdrawal of these medications that would lead to his death nine days later.

12.     Gregg County has claimed that after the death of inmate Amy Lynn Cowling in its Jail, as the direct result of the County's identical refusal to provide her prescription medications, including but not limited to Xanax (alprazolam), it has changed its policy and procedure of refusing to provide all medications -- including Xanax (alprazolam) and Norco (hydrocodone) -- that were on its list of non-approved medications to inmates such as Bobby Madewell. Regardless of this alleged change in policy, Bobby Madewell was refused his prescribed life-saving medications, and was not provided any substitute medical care to treat fatal withdrawal symptoms.

13.     Gregg County Jail records reflect that Bobby Madewell never received a single dose of Xanax (alprazolam) or Norco (hydrocodone) from the time he entered the jail on March 12, 2013 until his death nine days later.  Gregg County refused to allow Bobby Madewell to have his prescription medications regardless of his doctor's orders.

14.     From March 12, 2013 to March 21, 2013, Gregg County jail officials and medical personnel permitted Bobby Madewell to progress into a state of profound withdrawal, resulting from the precipitous withdrawal of his prescribed medications Xanax (alprazolam) and Norco (hydrocodone).  Throughout this interval, he was unable to eat and began having delusions and other common and usual symptoms from the precipitous withdrawal of these medications, including agitation, insomnia, seizures, seizure-like activity, and other symptoms.

15.     Despite the obvious symptoms of precipitous withdrawal from his prescribed alprazolam and hydrocodone medications, Gregg County refused to acknowledge that Bobby Madewell was suffering from extreme, fatal drug withdrawal and never provided him any treatment for it.  Instead, Bobby Madewell was allowed to progress into a profound state of physical and emotional decline.  During the nine days of his confinement in the Gregg County Jail before his death, the abrupt and precipitous withdrawal from his prescription medications caused Bobby Madewell to become increasingly delusional and seriously ill.  Jail medical staff, jailers, and other inmates witnessed his rapid physical and mental deterioration.

16.     Gregg County housed Bobby Madewell in the jail's E dorm from March 13-17, 2013.  During that time, Bobby Madewell continually complained to the other inmates that the jail staff was not giving him his medicine.  Bobby Madewell was not eating, he was not sleeping,

he lost control of his bowels, he was shaking, and he was delusional -- talking to people who weren't there and later to air conditioning vents.  In the early morning hours of March 17, 2013, Bobby Madewell became incomprehensible, and had a seizure.  Thankfully, Bobby Madewell's signs of distress were so obvious that his fellow inmates, untrained in any medical discipline, were able to anticipate the fall when the seizure took full hold of his faculties.

17.     When the other inmates got the jail staff's attention the morning of March 17, 2013, LVN Patrick Radcliff came and found Bobby Madewell laying on a mat at the door to the E Dorm.  The other inmates told Radcliff that Bobby Madewell had "fallen out with a seizure" and he had laid there between 30 to 45 minutes before the nurse came.  LVN Radcliff told the inmates Bobby Madewell was faking and dismissed their concerns despite their repeated protests.

18.     Later during the morning of March 17, 2013, LVN Melisa Simpson reported that Bobby Madewell was uncooperative and combative, was rambling incoherently, and attempted to physically attack her and a jailer while she was passing out meds in the E Dorm.  While Bobby Madewell was face down on the floor, LVN Simpson gave him 5 mg of Haldol (haloperidol) by injection and then she had him moved to MC 02, a separation holding cell, at 9:46 a.m.

19.     Gregg County Jail's policy allows LVNs to render medical treatment without proper supervision.  LVN Simpson had not reviewed Bobby Madewell's medical chart before she blindly administered a Haldol (haloperidol) injection according to jail policy.  Only after she administered the Haldol injection did she learn that jail medical records showed he was allergic

to Haldol.  <u>After</u> the injection of Haldol, and not before, LVN Simpson called jail medical director Dr. Lewis Browne on the phone.  Dr. Browne, without so much as looking at Bobby Madewell, prescribed Mellaril (thioridazine) and Cogentin (benzatropine) in accordance with Gregg County's medication policy, theorizing that Bobby Madewell had had a psychotic event, and in an effort to counteract a possible allergic reaction to the Haldol (haloperidol) injection.

20.     Although Dr. Browne comes to the jail every Wednesday night, no one on the Jail medical staff put Bobby Madewell on the list to see the doctor on March 13, 2013, or March 20, 2013, which was the night he ultimately died.  Although Dr. Browne apparently believed that on March 17, 2013, Bobby Madewell had experienced a psychotic event, and he had prescribed dangerous medications over the telephone, the doctor chose not to visit with Bobby Madewell when he next returned to the jail on March 20, 2013.

21.     Gregg County confined Bobby Madewell in a small separation cell, known as MC 02, from the morning of March 17, 2013 until approximately 12:45 a.m. on March 21, 2013.  During the time Bobby Madewell was confined in MC 02, he continued his rapid physical and mental deterioration to the point that he was still not eating, he sat naked in the cell even though the jail keeps the temperature very cold, and he continued to suffer from hallucinations, delusions, and fatal withdrawals.

22.     On Tuesday, March 19, 2013, Betty Madewell went to the Gregg County Jail to visit her son and was told that she could not see him because he was "very, very sick" and not eating.  She was extremely worried and contacted her son's attorney, who called the Gregg County Jail and was told that Bobby Madewell was "fine."

23.     The senior jail administrator on duty, Lt. Jeff Callaway, sent Captain Mike Claxton an e-mail concerning Bobby Madewell's well-being on Wednesday night, March 20, 2013 at 10:35 p.m.  Lt. Callaway had no difficulty advising Claxton that, "your neighbor is going downhill from the other night.  He is walking around talking to himself and standing between the shower and the wall.  Later he was holding the wiener off his dinner tray just walking around and talking to himself."  This e-mail was written less than three hours before Bobby Madewell died.  At the very moment the e-mail was written, Dr. Browne was in the Jail attending to other inmates.  Lt. Callaway was aware that Captain Claxton would not see the aforementioned e-mail communication until the next morning, but still did nothing to address Bobby Madewell's dire need for medical attention.

24.     On that same night of March 20-21, 2013, Lt. Callaway received a report that Bobby Madewell was acting like a naked caged animal in MC 02, and climbing up on the sink and on the table in the cell and falling off, and had defecated on himself.  Lt. Callaway observed Bobby Madewell walking around hallucinating talking to a hot dog wiener, and under the guise of a physical safety concern, Lt. Callaway armed himself with a Gregg County-issued Taser and decided Bobby Madewell would be moved to another cell down the hall, from MC 02 to MC 05.

25.     Lt. Callaway summoned four guards, Daren Burchak, Noble Simmons, Raul Salazar, and Demarcus Johnson, to assist him in the cell extraction and move of Bobby Madewell from MC 02 to MC 05.  Lt. Callaway and the four guards entered Bobby Madewell's cell, MC 02, and escorted him out into the hallway toward MC 05.  Once Bobby Madewell was out into the hall with all five men, he allegedly began to struggle, swinging his arms trying to get

loose, although he never said any coherent words.  The guards wrestled him to the floor.

Callaway used the Taser in "drive stun" mode on Bobby Madewell at least three times out in the

hall.  A Taser in "drive stun" mode does not incapacitate an inmate; it is used solely to inflict

substantial pain on the inmate.  Taser International, the manufacturer of the Taser device,

expressly instructs law enforcement agencies not to use a Taser on mentally ill inmates.  Bobby

Madewell's response to the multiple uses of the Taser on him was screaming and loud grunting.

After at least three applications of the Taser, the men dragged Bobby Madewell into MC 05.

26.     Lt. Callaway and the guards then left Bobby Madewell alone to hallucinate and

suffer in MC 05.  A few minutes later at approximately 1:00 a.m. on March 21, 2013, Lt.

Callaway received a call that Bobby Madewell was still jumping around and acting crazy in MC

05.  At the direction of Lt. Callaway another Taser was retrieved together with the Jail's

straitjacket system commercially known and sold as the "WRAP."  None of the guards had ever

had any formal training on how to use the "WRAP," so they laid it out on the hall floor and tried

to figure out how it worked.  The Basic Application Manual by the WRAP's manufacturer states,

"The WRAP Safe Restraint System should only be used by persons trained in its safe and proper

application."  Ignoring this warning, the Gregg County staff decided to place Bobby Madewell in

the WRAP while administering repeated and unmitigated rounds of pain-inducing Taser fires,

even though Bobby Madewell was incoherent and could not understand why he was being

Tased.

27.     As Lt. Callaway and the four guards entered MC 05 to place Bobby Madewell in

the WRAP restraint system, the guards forced Bobby Madewell down onto the floor and Tased

him even more.  Pitifully, not understanding what was being done to him, and nearing his death, Bobby Madewell instinctively tried to seek refuge under a 16" high bunk in response to the pain that was being inflicted on him.  At some point during this last episode Bobby Madewell stopped struggling to avoid the pain and the guards eventually secured him in the WRAP straitjacket. After his legs were bound, his body was bound, and his handcuffed wrists were tethered to his lower legs, Bobby Madewell fell over hard and hit his head on the concrete floor.  Lt. Callaway later described the thud as sounding like a bowling ball being dropped on concrete.

28.     After securing Bobby Madewell's body into the WRAP, the guards, in an effort to keep him from falling over again,  moved his body over to the opposite wall and propped him up against the corner of a partition in the cell.    At this point, they noticed that Bobby Madewell had ceased breathing.  When the guards couldn't find breath or a pulse, they summoned the medical staff on duty, LVNs Kay Alexander and Neomi Perez.  Neither nurse could find a pulse, breath or any other responsiveness, and they directed the jailers to take the handcuffs off Bobby Madewell and undo part of the WRAP so they could try to perform CPR.  Bobby Madewell died as a result of the unconstitutional denial of medical care by the Gregg County medical staff and guards beginning March 12, 2013 and ending in the early morning hours of March 21, 2013.

29.     Now concerned with protocol, Gregg County jail personnel called the City of Longview Emergency Medical Services for an ambulance and emergency medical personnel. The paramedics found that Bobby Madewell was pulseless and breathless and was dead when they arrived.   Bobby Madewell's body was transferred from the Gregg County Jail to Good Shepherd Medical Center where he was formally pronounced dead.

30.     The circumstances of Bobby Madewell's death are eerily similar to the death of Amy Lynn Cowling,[1] who died in the Gregg County Jail on December 29, 2010, four days and fifteen hours after her incarceration in the Jail.   Autopsy reports by two different doctors confirmed that Cowling's death was caused by seizures from the withdrawal from her prescription medications (including Xanax (alprazolam), the same medication also denied to Bobby Madewell), which Gregg County refused to provide to her because those medications were on its "non-approved medications" list.  Dr. Browne, the medical director of the Gregg County Jail, created the non-approved medications list that represents the official policy of Gregg County for medical care at the Jail.

31.     Evidence adduced in the Cowling case showed that if an inmate has been prescribed medications on the Gregg County Jail "non-approved medications" list, the Jail medical staff would not administer these drugs to an inmate no matter what the apparent need. There is no policy documentation relative to this list of non-approved drugs to differentiate between "prescribed" from "non-prescribed" medications, no consideration of clinical indications for the medications, no consideration of the likelihood of major drug withdrawal if the medication is suddenly discontinued, and no guideline or requirement relative to notification of Dr. Browne prior to abrupt discontinuation of these drugs at time of booking.  Like Cowling, Bobby Madewell had been prescribed medications that were on the Jail's "non-approved

---

1  *See Vicki Bankhead, et al v. Gregg County*, case 2:11-CV-00279-JRG, in the Eastern District of Texas, Marshall Division.  Judge Gilstrap was the presiding judge in the case.

medications" list, the Jail medical staff refused to provide him with the medications, and he was dead in a matter of days after entering the Jail.[2]

**IV.**
**CAUSE OF ACTION UNDER 42 U.S.C. § 1983**

32.     Plaintiff Betty Madewell re-alleges paragraphs 1 through 31, inclusive, with regard to all causes of action.

33.     At all times material to this Complaint, Gregg County acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Gregg County.

34.     Therefore acting under the color of law, Gregg County deprived Bobby Madewell and other pretrial detainees of the rights and privileges secured to them by the Fourth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment.   Madewell pleads her 42 U.S.C. § 1983 case under the alternative theories of conditions of confinement and episodic acts or omissions, as discussed at length by the Fifth Circuit in *Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009).   In *Shepherd*, the Fifth Circuit explained at length the legal distinctions between a conditions of confinement theory of recovery and an episodic acts or omissions theory of recovery, and reiterated and clarified the legal standards for a conditions of confinement claim.   The Fifth Circuit noted that constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a "condition of confinement" or an "episodic act or omission." *Shepherd*, 591 F.3d at 452.   Madewell believes that her case is

---

2  The case was settled after a third round of mediation, after the jury was selected.

properly analyzed as a conditions of confinement case; she pleads an episodic acts or omissions case in the alternative.

35.     Shepherd relied on evidence showing that the inadequate treatment he received in a series of interactions with the jail's medical system, including its failure to provide his prescription medications, inevitably led to his suffering a stroke.  *Shepherd*, 591 F.3d at 453. Dallas County was held liable for the unconstitutional conditions of confinement at its jail.[3]  The Fifth Circuit determined that from the evidence Shepherd adduced, the court could reasonably infer a *de facto* jail policy of failing properly to treat inmates.  This case is even more egregious because here, Madewell points to _official_, as well as _de facto_, policies of Gregg County that created and perpetuated a constitutionally inadequate system of health care and that resulted in Bobby Madewell's death.

36.     In addition, Gregg County maintains unconstitutional conditions, especially for mentally ill inmates, regarding its use of force and restraint policies, including the use of Taser devices and straitjacket devices like the WRAP.  These unconstitutional conditions result from Gregg County policies permitting the inappropriate use of Tasers, including on mentally ill inmates incapable of understanding and complying with the instructions of guards who then apply a Taser to the inmate to cause pain.  The precipitous withdrawal of his prescription medications caused Bobby Madewell to have the common withdrawal symptoms of delusions

---

3   Dallas County had no written policy in which it refused to provide an inmate his medications.  Dallas County medical staff had prescribed high blood pressure medication to Shepherd, but the medication administration system in the jail was so broken that Shepherd rarely received his medication, and ultimately suffered a massive stroke that has left him paralyzed for life.  By contrast, in this case, Madewell will prove through Gregg County's own documents that it had a written policy expressly denying all inmates any medication on a long list of "non-approved medications" regardless of the circumstances, and the refusal to give Bobby Madewell his prescription medications resulted in his death.

and hallucinations.  Gregg County policies fail to identify inmates like Bobby Madewell who are suffering from mental illness and fail to require alternative techniques, methods, and levels of force on those inmates.  Gregg County Jail staff use Tasers routinely against mentally ill inmates such as Bobby Madewell, resulting in excessive and inappropriate use of force and restraint.

37.     As described herein, the constitutionally inadequate system of medical care – the conditions at the Gregg County Jail – caused Bobby Madewell to suffer a deprivation of his constitutional rights.  In addition, Gregg County's unconstitutional excessive use of force and restraint caused Bobby Madewell to suffer a deprivation of his constitutional rights.  These conditions of his confinement as set forth in this Third Amended Complaint were not reasonably related to a legitimate governmental purpose.  These conditions amounted to punishment before Bobby Madewell was judged guilty and thus violated due process of law.  Gregg County's intent to punish pretrial detainees such as Bobby Madewell may be inferred from its decision to expose them to unconstitutional conditions.  In other words, an official intent to punish may be presumed when a plaintiff challenges general conditions, practices, rules, or restrictions of pretrial confinement.

38.     Gregg County is liable to Madewell under 42 U.S.C. §1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail and the resulting death of Bobby Madewell.  Gregg County's legislative body, its Commissioners' Court, also has a statutory, non-delegable duty under Texas law to provide a "safe and suitable" Jail rather than a constitutionally deficient one.  Tex. Loc.

Gov't Code § 351.001(a).  Gregg County is presumed to have intended these conditions through the decisions of its legislative body, the Commissioners' Court.

39.     Concerning specific conditions of confinement, at all relevant times by policy and procedure, Gregg County refused to provide certain medications, including alprazolam and hydrocodone, to inmates such as Bobby Madewell.  At all relevant times, Gregg County failed to provide constitutionally adequate medical care for inmates dependent upon prescription medications like Bobby Madewell.  At all relevant times, there was deficient medication administration at the Gregg County Jail, not only for alprazolam and hydrocodone but for other prescription medications as well, including Haldol. More egregiously, Gregg County has an unconstitutional medical policy of prescribing inmates unnecessary, contraindicated drugs as well as potentially fatal drugs that have been withdrawn from widely accepted medical use due to their likelihood of causing fatal symptoms.  Gregg County frequently failed to administer medication in accordance with prescriptions and follow general standards of care to monitor and adjust inmates' prescribed medication regimens.  At all relevant times, Gregg County failed to place decision-making employees with the proper medical background and knowledge to realize and understand all of the medical, biological, and physiological results associated with the immediate and continued withdrawal from prescription medication usage.  At all relevant times, Gregg County failed to provide consistent access to care and treatment from a physician for inmates in serious medical distress.  At all relevant times, Gregg County failed to monitor the confinement of inmates like Bobby Madewell to ensure that they were receiving appropriate medical services and medication in the jail.  At all relevant times, Gregg County failed to

maintain medical records that were accurate, complete, and transmitted to the proper medical professional at the jail.  Gregg County implemented policies, procedures, and practices which actually interfered with or prevented Bobby Madewell and other inmates from receiving constitutionally adequate medical services and medications.

40.     The challenged conditions set forth herein violated Bobby Madewell's constitutional rights and were the foreseeable product of the Gregg County Jail's policies of denying medications, including alprazolam and hydrocodone, to all inmates regardless of their doctors' prescribing of the medication, providing inadequate medical care for inmates who are dependent on prescription medications, failing to provide or refusing to provide other prescription medications, and failing to maintain accurate medical records and transmit them to the proper medical providers, because these conditions prevented confined persons such as Bobby Madewell from receiving constitutionally adequate medical care.  As Madewell shows herein, serious injury and death were the inevitable results of the Gregg County Jail's refusal to provide proper medical treatment to inmates such as Bobby Madewell.  The conditions challenged in this lawsuit were arbitrary or purposeless, and not reasonably related to a legitimate goal.  In the absence of any legitimate penological or administrative goal, Gregg County's actions amount to punishment in violation of Bobby Madewell's constitutional rights.

41.     Alternatively, Gregg County's failure to provide constitutionally adequate medical care to Bobby Madewell as well at other inmates incarcerated in the Gregg County Jail constitutes deliberate indifference to the serious medical needs of Bobby Madewell and others.  Gregg County jail officials and medical staff were actually aware of the serious risk to Bobby

Madewell of their refusal to provide him the medications his doctor had prescribed, yet they failed to act with deliberate indifference to that risk, and consciously disregarded the risk.  Jail officials exhibit deliberate indifference to an inmate's health when they refuse to treat him, ignore his complaints, or engage in any similar conduct that clearly evinces a wanton disregard for his serious medical needs.  From March 12, 2013 to March 21, 2013, Gregg County jail officials and medical personnel firmly rejected Bobby Madewell's pleas for help, refused to provide him with his prescription medications, administered to him contraindicated drugs and watched him progress into a state of precipitous and profound withdrawal of his prescribed medications until he experienced an excruciatingly painful and utterly unnecessary death.

42.     In addition, Gregg County's policies permitting the unconstitutional use of force and restraint, especially on inmates who are mentally ill, ensure that the violations of the inmates' constitutional rights and the physical and mental harm to inmates such as Bobby Madewell were the highly predictable consequence of these policies.  Gregg County also has policies, customs and practices by which Gregg County condones and ratifies the inappropriate and excessive use of Tasers on inmates, including mentally ill inmates.  Gregg County willfully refuses to follow manufacturer Taser International's express instruction to law enforcement agencies not to use Tasers on mentally ill inmates.  As a result, in following these policies, Gregg County Jail staff use excessive force and restraint on inmates in violation of the Fourth and Eighth Amendments and clearly established law.  These actions constitute deliberate indifference to the constitutional rights and the mental and physical welfare of the inmates for whom Gregg County is responsible.

**PLAINTIFF'S THIRD AMENDED COMPLAINT**                                                    **PAGE 18**

43.     Moreover, Gregg County is liable for the actions of its jail officials and medical staff as described in this lawsuit because the constitutional violations of which Madewell complains resulted from policies or customs adopted and maintained by Gregg County with objective deliberate indifference.  From the moment that Bobby Madewell was confined in the Gregg County Jail, jail officials and medical personnel were told that it was imperative that Bobby Madewell receive his physician-prescribed medications on a timely basis and his need for these medications.  By official policy and procedure, however, Gregg County refused to provide certain medications, including alprazolam and hydrocodone, to inmates such as Bobby Madewell despite their doctors' orders.  Gregg County failed to provide constitutionally adequate medical care for inmates dependent on prescription medications like Bobby Madewell.  Gregg County provided deficient medication administration at the jail such as administering to him contraindicated drugs.  Gregg County refused to administer medications prescribed to inmates. Gregg County failed to provide consistent access to care and treatment from a physician for inmates suffering from drug withdrawal or other serious medical distress.  Gregg County failed to monitor the confinement of inmates to ensure that they were receiving appropriate medical services and medication in the jail.  Gregg County failed to maintain medical records that were accurate, complete, and transmitted to the proper medical professional at the jail.

44.     Gregg County also failed to place decision-making employees with the proper medical background and knowledge to realize and understand all of the medical, biological, and physiological results associated with the immediate and continued withdrawal from prescription alprazolam and hydrocodone usage by Bobby Madewell.  Had the proper decision-making

employees been in place, Bobby Madewell would not have had to endure the pain and agony that he went through during his days of confinement in Gregg County's jail and which eventually caused his death while he was under Gregg County's control.

45.     Gregg County implemented policies, procedures, and practices which actually interfered with or prevented Bobby Madewell and other inmates from receiving constitutionally adequate medical services and medication.   Gregg County's deliberately indifferent actions and/or inactions exposed Bobby Madewell to a serious risk of substantial harm and, in fact, caused substantial harm to him by causing his death as described above.   These official policies of Gregg County were the moving force behind the constitutionally inadequate medical care provided to Bobby Madewell and the cause of his death.

46.     In addition, Gregg County implemented policies, procedures, and practices that permitted the unconstitutional use of force, including Tasers and the WRAP restraint, on mentally ill inmates such as Bobby Madewell.   Gregg County's deliberately indifferent actions and/or inactions exposed Bobby Madewell to a serious risk of substantial harm and, in fact, caused substantial harm to him by essentially torturing him in the last hours and moments of his life, as described above.   These official policies of Gregg County were the moving force behind the unconstitutional use of force and restraint on Bobby Madewell and the unnecessary bodily harm, pain, suffering and terror inflicted on him immediately preceding his death.   These policies deprived Bobby Madewell of the rights to be free from unreasonable seizure and free from the use of excessive force.

47.     Gregg County maintained these official policies with deliberate indifference to Bobby Madewell's constitutionally protected rights.  Specifically, Gregg County intentionally, and with deliberate indifference, deprived Bobby Madewell of his clearly established federal constitutional rights to constitutionally required reasonably safe conditions of confinement, including his right to receive proper medical care and medications for his serious medical conditions that were known to Gregg County, his right to be free from the unconstitutional use of force and restraint, and his right to be free from punishment as a pretrial detainee.

48.     By its actions and/or inactions as described above, Gregg County has violated 42 U.S.C. § 1983 and Bobby Madewell's constitutional rights.

**V.**

**DAMAGES**

49.     As a result of Gregg County's statutory and constitutional violations, Plaintiff Betty Madewell has suffered serious and substantial damages and injuries for which she requests the award of the following categories of damages:

a.      The mental anguish, including emotional pain, torment and suffering that Madewell has experienced in the past and in the future due to the death of her son, Bobby Madewell;

b.      The loss of society and companionship representing the positive benefits flowing from the love, comfort, companionship and society that Madewell has sustained in the past and in the future, in reasonable probability, due to the death of her son, Bobby Madewell;

c.      The physical pain and suffering endured by Bobby Madewell throughout his confinement in the Gregg County Jail until his death.

d.      The mental anguish, including emotional pain, torment, and suffering that Bobby Madewell endured throughout his confinement in the Gregg County Jail until his death; and

e.    The medical expenses and burial expenses incurred by Bobby Madewell's estate and which were necessary for his treatment and eventual burial resulting from his death.

50.    Madewell has retained the services of the undersigned attorneys, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1988.

## VI.
## JURY DEMAND

51.    Madewell demands a trial by jury.

## VII.
## PRAYER FOR RELIEF

52.    For the reasons stated above, Plaintiff Betty Madewell, individually and as representative of the Estate of Bobby Joe Madewell, Jr., deceased, requests that upon final trial or hearing, a judgment be entered in favor of the Plaintiff and against Defendant Gregg County as follows:

a.    Awarding Madewell compensatory and actual damages in an amount that is deemed sufficient by the trier of fact;

b.    Awarding Madewell reasonable and necessary attorneys' fees under 42 U.S.C. § 1988 and costs of court;

c.    Awarding Madewell pre-judgment interest at the highest rate permitted by law;

d.    Awarding Madewell post-judgment interest at the highest rate permitted by law; and

e.    Awarding Madewell all such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,


By: _____/s/Jarom Tefteller_____
        Jarom Tefteller
        State Bar No. 24060705
        Todd Tefteller
        State Bar No. 19762300
        TEFTELLER LAW, PLLC
        403 West Tyler Street
        Gilmer, Texas 75644
        Telephone: (903) 843-5678
        Fax: (903) 680-2310
        Email:  jt@teftellerlaw.com
        Email:  toddt@teftellerlaw.com

        Debbie Branscum
        State Bar # 02897300
        P.O. Box 394
        Bedford, Texas  76095-0394
        Telephone:  (214) 206-1975
        Facsimile:  (214) 432-0130
        Email:  dbranscum@tx.rr.com

        Ronald W. Armstrong, II
        State Bar No. 24059394
        THE ARMSTRONG FIRM, PLLC
        110 Broadway, Suite 444
        San Antonio, Texas 78205
        Telephone:  (210) 277-0542
        Facsimile:  (210) 277-0548
        Email:  rwaii@armstrong-firm.com

        ATTORNEYS FOR PLAINTIFF
        BETTY MADEWELL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of September, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Robert Scott Davis
Robin Hill O'Donoghue
FLOWERS DAVIS, LLP
1021 E.S.E. Loop 323, Suite 200
Tyler, TX   75701

***Attorneys for Defendant Gregg County***

/s/ Debbie Branscum
Debbie Branscum